﻿Citation Nr: AXXXXXXXX
Decision Date: 06/30/20 Archive Date: 06/30/20

DOCKET NO. 200430-80712
DATE: June 30, 2020

ORDER

Entitlement to a higher rate of non-service-connected disability pension benefits is denied.

FINDING OF FACT

The Veteran has been awarded the maximum rate of pension as of the earliest effective date permissible by law.

CONCLUSION OF LAW

The criteria for entitlement to a higher rate of payment of non-service-connected pension benefits have not been met. 38 U.S.C. § 1521; 38 C.F.R. §§ 3.3, 3.23, 3.155, 3.271, 3.272, 3.400.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had honorable active military service from March 1951 to February 1955. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a Department of Veterans Affairs (VA)’s March 2020 Appeals Modernization Act (AMA) decision that granted an increase in the Veteran’s non-service-connected disability pension benefits effective February 1, 2019. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Entitlement to a higher rate of non-service-connected disability pension benefits.

The Veteran was initially granted entitlement to non-service-connected disability pension benefits with special monthly pension based on the need for aid and attendance in a December 2017 decision effective November 7, 2017, the date of his initial claim for pension. He was awarded an initial pension benefit payment of $276.00 a month starting December 1, 2017 and an increase to $287.00 a month starting February 1, 2018. 

In February 2019, the Veteran submitted an Intent to File advising VA of his intent to submit a pension claim. In April 2019, the Veteran submitted a new claim for pension benefits with special monthly pension on VA Form 21-527EZ along with multiple other documents to include a VA Form 21P-8416, Medical Expense Report; a VA Form 21P-0969, Income and Asset Statement in Support of Claim; a VA Form 21-2680, Examination for Housebound Status or Permanent Need for Regular Aid and Attendance, along with a Care Expense Statement from his residential facility; and an April 2018 letter from the Social Security Administration regarding his Social Security benefits. Although the Veteran submitted a statement with his application, he did not advise the purpose for which he submitted this new application when he is already in receipt of pension benefits with special monthly pension. 

In an August 2019 rating decision and notice letter, the Veteran was advised that his entitlement to special monthly pension was confirmed and continued and that his pension benefits were being continued at the present rate of $292.00 a month. In September 2019, the Veteran filed a supplemental claim; however, he was notified later that month that his supplemental claim could not be reviewed because it was incomplete. In October 2019, the Veteran resubmitted the August supplemental claim with duplicate copies of the attachments submitted with his original claim submitted in April 2019. As it was identical to the August supplemental claim, the Board concludes it cannot be considered a valid claim.

In addition, in October 2019, the Veteran was sent a duty to assist letter asking for documentation to support his unreimbursed medical expenses for his residential living facility reported on the VA Form 21P-8416 he submitted in April 2019. Later that month, the Veteran submitted a statement from his residential living facility showing the charges and payments to his account since February 2019. In a March 2019 notice letter, the AOJ granted the Veteran increased pension benefits because the evidence showed changes to the amount of medical expenses paid for 2019 and ongoing. His monthly payment was increased to $1,881.00 effective February 1, 2019, and $1,911.00 as of December 1, 2019. 

In April 2020, the Veteran filed notice of disagreement (NOD) with the Board on VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement).

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claim of additional nonservice-connected pension benefits, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The Veteran argues in essence that he should have received more money from an earlier date and that he should have received a full reimbursement from VA for the cost of his residential living facility. Unfortunately, the Board cannot find that the Veteran is entitled to payment of any additional monies because it finds that the AOJ awarded him the maximum amount of pension benefits to which he is entitled based on the laws applicable to this case.

VA nonservice-connected pension benefits are payable to a veteran who is permanently and totally disabled from nonservice-connected disability or disabilities, which is not the result of willful misconduct, but only where the veteran has the requisite active wartime service. 38 U.S.C. § 1521(a); 38 C.F.R. §§ 3.3, 3.314(b). 

VA’s pension program is set up to assist certain veterans and their survivors who are in need, it is an income-based program only intended to give beneficiaries a minimum level of financial security. It is not intended to protect substantial gains in income or assets. By law VA must reduce pension benefits by the gross amount of countable family income received. 38 C.F.R. § 3.271 and 3.273.

Basic entitlement to pension exists if, among other things, the claimant’s income is not in excess of the maximum annual pension rate (MAPR) specified in 38 C.F.R. § 3.23. 38 U.S.C. § 1521; 38 C.F.R. § 3.3(a)(3). The MAPR is published in Appendix B of the VA Adjudication Procedures Manual M21-1 and is given the same force and effect as if published in VA regulations. 38 C.F.R. § 3.21. The MAPR is revised every December 1st and is applicable for the following 12-month period. The MAPR shall be reduced by the amount of the countable annual income of the claimant. 38 U.S.C. §§ 1503, 1521; 38 C.F.R. §§ 3.3, 3.23(b).

In determining annual income, all payments of any kind or from any source (including salary, retirement or annuity payments, one-time lump sum payments or similar income, even if waived) shall be included during the 12-month annualization period in which received, except for income specifically excluded. 38 U.S.C. § 1503(a); 38 C.F.R. §§ 3.271(a), 3.272. Gross income received is counted rather than the amount of the payment a beneficiary receives, except where certain expenses are allowed to be deducted (e.g., necessary operating expenses are deductible from business, farm or professional income and medical, legal or other expenses incident to an injury or death or expenses incident to the collection or recovery of the amount of an award or settlement for an injury or death are deductible from compensation received for an injury or death). The amount of recurring and irregular income anticipated or received by a beneficiary shall be added to determine the beneficiary’s annual rate of income for a 12-month annualization period commencing at the beginning of the 12-month annualization. 38 C.F.R. § 3.273(d). The amount of nonrecurring income (e.g., an inheritance) received by a beneficiary shall be added to the beneficiary’s annual rate of income for a 12-month annualization period commencing on the effective date on which the nonrecurring income is countable. 38 C.F.R. § 3.273(c). 

For purposes of calculating countable income, total income may be reduced by amounts paid by a claimant for unreimbursed medical expenses that are “in excess of 5 percent of the applicable maximum annual pension rate or rates... as in effect during the 12-month annualization period in which the medical expenses were paid.” 38 C.F.R. § 3.272(g)(1)(iii). In order to be excluded from income, these medical expenses must be paid during the time period at issue, regardless of when they were incurred. In addition, they must be out-of-pocket expenses, for which the claimant received no reimbursement, such as from an insurance company. However, medical insurance premiums themselves, including Medicare Plan B premiums deducted from Social Security benefits, may be applied to reduce countable income.

For the purpose of determining initial entitlement, or for resuming payments on an award that was previously discontinued, the monthly rate of pension shall be computed by reducing the applicable maximum pension rate by the beneficiary’s countable income on the effective date of entitlement and dividing the remainder by twelve. 38 C.F.R. § 3.273(a). In essence, VA subtracts the total amount of countable income in one year from the MAPR for that year; then, if a positive amount remains, the rest is divided by 12 to determine the monthly pension benefit. When a change in the MAPR occurs, VA repeats the calculation with the new MAPR as the starting amount on the effective date of the change, typically December 1st. 38 C.F.R. § 3.273(b)(1). Whenever there is a change in a beneficiary’s countable income, VA will repeat the calculation using the beneficiary’s new countable income effective the date of the change in the amount of income. 38 C.F.R. § 3.273(b)(2). 

In the present case, the April 2019 aid and attendance examination report shows that his physician stated that the Veteran requires nursing home care because he needs a protective environment to monitor him closely. However, the care expense statement submitted from the Veteran’s residential facility does not indicate in what type of facility he is residing only that they provide a protective environment and assistance with activities of daily living (specifically “meal prep, laundry and/or housekeeping” and “service coordination”). The statement further indicates these services started January 21, 2019 and the monthly cost for these services is $2,793.00, as well as there was a one-time community fee of $2,500.00. 

It appears this is the only change the Veteran reported in April 2019 from previous income and medical expense figures previously considered. Thus, it appears the purpose of the Veteran’s April 2019 application was simply to advise VA of a status change, which was an increase in his continuing medical expenses, and, therefore, to request an increase in his VA pension benefits. This is what he was awarded in the March 2020 decision.

The Veteran was previously only allowed continuing medical expenses of $1,608.00 for his Medicare Part B insurance premiums to offset his income of $20,004.00 resulting in income for VA purposes of $19,072.00. See December 1, 2018 VA letter advising Veteran of a cost of living adjustment to his benefits. However, in the March 2020 decision, continuing medical expenses for the 2019 calendar year of $34,849.00 were allowed consisting of $1,626.00 for Medicare Part B insurance premiums, $30,723.00 for residential facility fees and $2,500.00 for the one-time community fee to the Veteran’s residential facility. This amount less the five percent deductible of $676.00 is greater than the Veteran’s annual income of $20,004.00 (his gross monthly Social Security benefit of $1,667.00 x 12 months). Thus, the Veteran’s income for VA purposes was zero and he was entitled to the full MAPR for a veteran without dependents and with aid and attendance of $22,577.00 (or $1,881.00 monthly) as of February 1, 2019. 

Unlike what the Veteran seems to believe, VA does not reimburse pension beneficiaries for unreimbursed medical expenses. Rather the law allows unreimbursed medical expenses to reduce a beneficiary’s income to increase one’s pension benefit. In such a way, it may seem like a reimbursement because it can be a dollar-for-dollar exchange. When medical expenses are less than income, every dollar of allowable medical expenses reduces a beneficiary’s income thereby increasing the beneficiary’s pension benefit. However, medical expenses can never decrease a beneficiary’s income below zero. As such, it is not a reimbursement because, as in the present case, the full amount of the medical expenses paid cannot ever be regained as recovery is limited to a beneficiary’s income. Thus, when the beneficiary’s medical expenses exceed income, income is reduced to zero and the beneficiary receives the maximum pension benefit. Such is the case here. 

Furthermore, the Veteran seems to be arguing that he should be paid as of February 1, 2019 rather than April 2019 because that is when he first filed his claim. However, as previously stated, the increase in pension benefits was awarded as of February 1, 2019. The effective date of the award has nothing to do with the date of the Veteran’s claim except that it was filed within the same calendar year in which the adjustment was made. Where payment was made at a lower rate over a 12-month annualization period based on anticipatory income, pension benefits may be increased in accordance with the facts found but not earlier than the beginning of the appropriate 12-month annualization period if satisfactory evidence is received within the same or the next calendar year. 38 C.F.R. § 3.660(b)(1). This provision permits beneficiaries to submit claims for unreimbursed medical expenses up to one year after the end of a 12-month annualization period, which generally is the calendar year in most pension cases.

In the present case, the Veteran’s benefits for 2019 were calculated in December 2018 in anticipation that his income for VA purposes would be $19,072.00. See December 1, 2018 VA letter. However, based on his April 2019 claim and the evidence submitted thereafter, it was shown that his income for VA purposes for the 2019 calendar year (i.e., the 12-month annualization period) was actually zero. Generally, increased awards take effect the first day of the calendar month 

 

following the month in which the award became effective. See 38 C.F.R. §§ 3.31. Therefore, the AOJ appropriately began his new pension payments as of February 1, 2019, the first day of the month after the increase took effect in January 2019.

 

 

M. C. GRAHAM

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S.M. Kreitlow

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.